UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Russell and Malveaux
Argued at Lexington, Virginia

CHANTZ PARKER, S/K/A
  CHANTZ NATHANIEL PARKER

MEMORANDUM OPINION[*] BY
v.     Record No. 0113-16-3     JUDGE MARY BENNETT MALVEAUX
FEBRUARY 21, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
James J. Reynolds, Judge

Jason S. Eisner for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Chantz Parker ("appellant") was convicted of armed burglary, in violation of Code

§ 18.2-89, attempted robbery, in violation of Code §§ 18.2-26 and -58.1, wearing a mask in public,

in violation of Code § 18.2-422, and three counts of using a firearm during the commission of a

felony, in violation of Code § 18.2-53.1. On appeal, appellant argues that: (1) the trial court erred

in denying his motion to sever his trial from that of his codefendant; (2) the trial court erred by

admitting medical records; and (3) the evidence was insufficient to prove either his identity as one

of the perpetrators or his specific intent to commit robbery. We disagree with appellant's

contentions, and consequently, we affirm the judgment of the trial court.

## I. BACKGROUND

Around 11:15 p.m. on March 26, 2014, Mark and Janet Moore heard an unexpected

knock at their front door. Through a window, they saw a young man wearing a black hoodie.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The man in the hoodie told the Moores that his car had broken down. He then asked to use a telephone. Feeling uneasy, Mark Moore went to his bedroom and retrieved his handgun. He returned to the entrance way and began to unlock the door.

As Moore turned the deadbolt, the man in the hoodie forced his way through the front door, knocking him into a coffee table and pushing Moore's wife over a recliner. Two masked men, carrying "assault"-style rifles entered into the home as well.

The man wearing the hoodie shot Moore through the thigh. As he fell, Moore fired at one of the masked men. Although Moore was not sure that he struck his target, the rifle fell from the targeted man's hands. The man in the hoodie continued firing, grazing Moore's scalp. As the intruders regrouped and fled, Moore fired another shot at them.

The home invasion lasted twenty to twenty-five seconds. None of the intruders demanded anything or attempted to take any property from the home during the encounter.

After midnight that same evening, Raphael Brown and appellant arrived at Annie Penn Hospital's emergency room in Reidsville, North Carolina.[1] Brown had multiple gunshot wounds to his arms and chest. Appellant had a gunshot wound in the back of his left calf. Both men told the police that they were hit by stray gunfire when shooting broke out at a party in Reidsville. No reported shooting incidents in Reidsville were noted for that evening. Neither Brown nor appellant could recall where the party was held, names of other party guests or who hosted the party.

Both men denied involvement in the home invasion.

---

[1] Reidsville is located in Rockingham County, which lies near the border between Virginia and North Carolina. An investigator later determined that driving from the Moores' residence in Danville to Annie Penn Hospital ordinarily would take about thirty-eight minutes if one left around 11:30 p.m. and drove the speed limit.

Brown and appellant were indicted on a number of felonies arising out of the home invasion, including armed burglary, attempted robbery, and wearing a mask in public.[2] Each man also was indicted on three counts of using a firearm during the commission of a felony.

After the Commonwealth moved to try the two men jointly, appellant filed a motion to sever. At a pretrial hearing, appellant argued that a joint trial might impede his ability to introduce alibi evidence if Brown offered a conflicting alibi.[3] He also argued that the evidence against Brown, which he perceived to be substantially stronger, would implicate him by association in a joint trial. Appellant further suggested that any minor contradictions between his and Brown's statements to police might be used to impeach him. The trial court denied appellant's motion, observing that appellant had at most demonstrated potential prejudice, not actual prejudice. Appellant renewed his motion immediately before trial. The court again denied his motion.

The Commonwealth also filed pretrial motions to procure the attendance of several witnesses from North Carolina, including the custodians of records for both Annie Penn Hospital and Wake Forest Baptist Medical Center, where Brown's surgery was performed. Appellant objected to orders granting these motions, asserting that they represented "an attempt to introduce confidential medical records." He renewed his objection to the issuance of a new round of certificates procuring their attendance after the trial was continued.

---

[2] Both men also were indicted on one count of aggravated malicious wounding and two counts of shooting into an occupied dwelling. The trial court granted a motion to amend the indictment for aggravated malicious wounding, downgrading that charge to malicious wounding. These additional charges were resolved either by motion to strike or by acquittal and are not at issue on appeal.

[3] The prosecution pointed out, however, that both Brown and appellant had already filed nearly identical notices of a possible alibi. Appellant's alibi notice reiterated his earlier claim that he was at a party in or near Reidsville on the night in question.

Brown raised a similar objection to the introduction of the medical records during the trial itself, arguing that their disclosure "would be in violation of his medical privacy rights under HIPAA and . . . any sort of state HIPAA as well."[4]  Appellant joined in this objection, expressly incorporating Brown's arguments as well as his handwritten objections on the original certificates.  The court overruled their objections, observing that even if admission of the records violated HIPAA, the appropriate remedy was not exclusion in the criminal trial but a separate action for damages.

Wendy Gibson, a forensic scientist, testified at trial that the projectiles that hit Brown were consistent with the unusual ammunition that Moore used against the intruders.  The shells in Moore's revolver each contained three disc-shaped slugs and a number of spherical pellets.  Police found four slugs embedded in the doors and walls at the Moores' residence.  Surgeons found two more slugs and a pellet embedded in Brown.  Gibson compared these projectiles with Moore's remaining shells and available literature on the ammunition.  She opined that the slugs and pellet removed during Brown's surgery shared the characteristic dimensions and weight as the slugs and pellets removed from Moore's unfired ammunition.

FBI Special Agent David Church testified that Brown's cell phone records indicated that someone used Brown's phone to place a call from within the cellular sector that covers the Moores' residence at 11:27 p.m. that evening.  Special Agent Church opined as an expert on cell site analysis that the phone must have been in the general area of the Moores' home at the time.

The Commonwealth also presented evidence showing that bloodstains matching Brown's DNA profile were found in a vehicle that belonged to the man in the hoodie.  Police conducted a photo lineup at which the Moores identified Jamison Canavan as the man in the hoodie.  Police

---

[4] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §§ 1320d-1320d-9 (2016).  One of the objectives Congress sought to advance through HIPAA was "preserving individual privacy in personal health information."  Citizens for Health v. Leavitt, 428 F.3d 167, 171 (3d Cir. 2005).

learned that Canavan's father had traded in a SUV at a local dealership a few months after the home invasion. A witness who knew Canavan remembered seeing him drive the SUV on a regular basis. After locating the new owner, police searched the vehicle and discovered bloodstains on the driver's seat and seatbelt connector as well as the front passenger's seatbelt connector. Forensic scientist Patricia Taylor developed a DNA profile for these bloodstains, which she matched to Brown's DNA profile. She ultimately opined that the odds of Brown coincidentally matching the DNA profiles in either of these bloodstains was greater than one in 7.2 billion.

Evidence adduced at trial proved that someone used appellant's phone to send two text messages at 11:27 p.m. from the cellular sector covering the Moores' home. There was no forensic evidence placing appellant in either the Moores' residence or the recovered vehicle. The projectile that hit appellant was not compared with the ammunition from Moore's gun.

At the close of the Commonwealth's case-in-chief, both defendants made motions to strike the evidence. Appellant moved to strike the armed burglary charge, arguing that no evidence proved his specific intent to commit robbery when he entered the Moores' residence. Appellant also moved to strike the attempted robbery charge on the same grounds. Appellant further moved to strike all of the charges on the grounds that there was "absolutely no evidence" that he participated in the home invasion. The trial court denied these motions.

The jury convicted appellant.

## II. ANALYSIS

### A. Joinder/Severance

The decision to join or sever trials turns upon showings of good cause and findings of prejudice to the defendant. See Code § 19.2-262.1 (providing the standards for joinder and severance); Allen v. Commonwealth, 58 Va. App. 618, 621-22, 712 S.E.2d 748, 749-50 (2011).

"The underlying determinations of good cause and prejudice involve a case-by-case exercise of the trial court's discretion." Allen, 58 Va. App. at 622-23, 712 S.E.2d at 750. We will reverse for an abuse of that discretion "[o]nly when reasonable jurists could not differ." Id. at 623, 712 S.E.2d at 750 (quoting Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009)).

Appellant argues that the trial court erred in denying his motion to sever his co-defendant's trial from his trial. Appellant posits that the joint trial allowed evidence admissible only against Brown to be offered against him, as well.

Code § 19.2-262.1, which governs joinder in criminal cases, establishes an "initial burden of persuasion on the Commonwealth to show good cause for a joint trial." Id. at 622, 712 S.E.2d at 750. Once the Commonwealth meets that threshold, the burden shifts to the defendant to show that "a joint trial would cause '*actual prejudice*' to his rights." Id. at 623, 712 S.E.2d at 750 (emphasis added) (quoting Randolph v. Commonwealth, 24 Va. App. 345, 363, 482 S.E.2d 101, 110 (1997)). "Prejudice requiring severance . . . results only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence . . . .'" Randolph, 24 Va. App. at 364, 482 S.E.2d at 110 (quoting Barnes v. Commonwealth, 22 Va. App. 406, 412, 470 S.E.2d 579, 582 (1996)).

Appellant asserts that the admission of certain evidence prejudiced him. Appellant offered an alibi defense to the charges against him. In his motion before the trial court he noted his alibi defense, as well as the potential for contradictory evidence offered by his co-defendant, as the basis for severing the two trials. On brief, he argues that the evidence was improperly used against him.

Generally speaking, all relevant evidence is admissible, unless some other rule, statute, or constitutional right renders it inadmissible. Va. R. Evid. 2:402(a). Evidence is relevant if it tends to "make the existence of any fact in issue more probable or less probable." Va. R. Evid. 2:401. In this case, appellant's alibi defense made Brown's location at the time and date of the home invasion relevant and admissible.

On the night of the home invasion, appellant explained that he and Brown were together at a party in Reidsville, North Carolina, when they were both inadvertently caught in cross-fire between unknown individuals who began shooting. As a result of the spontaneous gunshots, both were wounded and subsequently treated at Annie Penn Hospital. Brown's cell phone records, the projectiles recovered from his gunshot wounds, and the blood evidence in the recovered car tend both to prove that Brown was at the Moores' home and to disprove that he was in Reidsville at a party. Since appellant ties his location on the evening of the offenses to Brown, Brown's location would have been relevant even in a separate trial.

Further, appellant does not offer any proof of actual prejudice to support his argument that the failure to server the trials was error. Mere argument that "a separate trial would offer a better chance at acquittal is insufficient." United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995) (quoting United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986)); see also Barnes, 22 Va. App. at 412-13, 470 S.E.2d at 582 ("[P]rejudice does not exist merely because a co-defendant has a better chance of acquittal if tried separately . . . .").

Therefore, we find that the trial court did not abuse its discretion in denying appellant's motion to sever the trial.

### B. Violation of Code § 32.1-127.1:03

"The admissibility of evidence is within the broad discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of an abuse of discretion." Godoy v.

Commonwealth, 62 Va. App. 113, 119, 742 S.E.2d 407, 410 (2013) (quoting Jones v. Commonwealth, 50 Va. App. 437, 446, 650 S.E.2d 859, 863 (2007)). A trial court "by definition abuses its discretion," however, "when it makes an error of law." Ngomondjami v. Commonwealth, 54 Va. App. 310, 319, 678 S.E.2d 281, 285 (2009) (quoting Auer v. Commonwealth, 46 Va. App. 637, 643, 621 S.E.2d 140, 143 (2005)). When a trial court's evidentiary ruling rests upon its interpretation of a statute, we review its statutory construction *de novo*. Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001).

Appellant asserts that the introduction of his and Brown's[5] medical records into evidence violated Code § 32.1-127.1:03. He argues that the trial court erred by allowing the Commonwealth to publish his and Brown's medical records to the jury because the Commonwealth failed first to obtain their consent in accordance with Code § 32.1-127.1:03(A)(3). This assertion is erroneous. While the statutory scheme is concerned with protecting patient privacy rights, it clearly anticipates that medical records which are at issue in a criminal or civil proceeding may be lawfully obtained by a variety of means.[6] Reading the statute as requiring an adverse party's consent before his medical records can be presented in a legal proceeding misunderstands the statute's plain language.

Code § 32.1-127.1:03(A) recognizes an individual's statutory "right of privacy in the content of his health records." While the records themselves belong to the entity that maintains them, the Code strictly limits the circumstances under which the entity or other health care

---

[5] Assuming without deciding that appellant has standing to object to the introduction of Brown's medical records under Code § 32.1-127.1:03, the medical records are admissible for the reasons stated below.

[6] Code § 32.1-127.1:03 contemplates that health care entities will disclose medical records to other parties in anticipation of litigation. Subsection D provides that, when required by law, health care entities shall disclose health records "in compliance with a subpoena issued in accord with subsection H, pursuant to a search warrant or a grand jury subpoena, pursuant to a court order upon good cause shown, or in compliance with a subpoena issued pursuant to subsection C of § 8.01-413."

workers may disclose those records to others. Section 32.1-127.1:03(A)(4) requires that entities disclose an individual's health records to other health care entities upon the individual's request. Section 32.1-127.1:03(A)(2) generally prohibits others from removing records from a health care entity's premises without its approval or a valid court order or subpoena.

This section also protects the individual's privacy right by limiting the scope of a permissible disclosure. This section states in pertinent part that "[n]o person to whom health records are disclosed shall redisclose or otherwise reveal the health records of an individual, *beyond the purpose for which such disclosure was made*, without first obtaining the individual's specific authorization to such redisclosure." Code § 32.1-127.1:03(A)(3) (emphasis added).[7]

Appellant reasons under Code § 32.1-127.1:03(A)(3), it "is perfectly clear that the Commonwealth, to whom disclosure of the records was made, was barred from disclosing [his and Brown's] records to anyone else" unless the purpose behind their original disclosure was to submit them into evidence at trial. He suggests that the Commonwealth's original purpose was simply to examine the records as part of determining how to present its case. He argues the trial court erred by allowing the prosecution to publish those records to the fact-finder. This assertion is incorrect.

It is clear that under Code § 32.1-127.1:03, the General Assembly did not intend litigants to be able to prevent fact-finders from considering medical records simply by withholding their consent. "The primary objective of statutory construction is to ascertain and give effect to legislative intent." Lawlor v. Commonwealth, 285 Va. 187, 236, 738 S.E.2d 847, 875 (2013) (quoting Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)). To discern the true intention behind a statute, this Court must analyze it with respect to its place in "the entire body

---

[7] This section does note certain exceptions that are not at issue in this case.

of legislation and the statutory scheme." <u>M.G. v. Albemarle Cty. Dep't of Soc. Servs.</u>, 41 Va. App. 170, 181-82, 583 S.E.2d 761, 766 (2003) (quoting <u>Va. Real Estate Bd. v. Clay</u>, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989)).  Consent was only required if the Commonwealth sought to redisclose the medical records beyond the original purpose for which they were obtained.

While the term "purpose" is not defined in the statute, it "must be 'given its ordinary meaning, given the context in which it is used.'" <u>Meeks v. Commonwealth</u>, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting <u>Sansom v. Bd. of Supervisors</u>, 257 Va. 589, 595, 514 S.E.2d 345, 349 (1999)).  "Furthermore, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction . . . .'" <u>Id.</u> (alteration in original) (quoting <u>Commonwealth v. Zamani</u>, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).  Additionally, "a statute should never be construed in a way that leads to absurd results."  <u>Id.</u>

Purpose is defined in part as "an end or aim to be kept in view in any plan, measure, exertion, or operation."  <u>Webster's Third New International Dictionary</u> 1847 (2002).  The Commonwealth's purpose for obtaining Brown and appellant's medical records appears plain:  to present evidence to the trier of fact that would link appellant and Brown to the home invasion.[8] Appellant's understanding of the term "purpose" in Code § 32.1-127.1:03(A)(3) would frustrate the efficacy of discovery rules codified elsewhere in the statute.  Therefore, his narrow interpretation must fail.

The trial court, in this matter, did not err in allowing the publication to the jury of appellant and Brown's medical records.

---

[8] Appellant appeared to acknowledge this purpose in his objections to subpoenas for witnesses from Annie Penn Hospital and Wake Forest Baptist Medical Center.  Appellant objected that the Commonwealth subpoenaed those witnesses in order to introduce "confidential medical records."

C. Motion to Strike/Sufficiency

When reviewing the denial of a motion to strike the evidence, "we must uphold the conviction unless it was plainly wrong or lacked evidence to support it." Blevins v. Commonwealth, 63 Va. App. 628, 634, 762 S.E.2d 396, 398 (2014). "We review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Scott v. Commonwealth, 7 Va. App. 252, 263, 372 S.E.2d 771, 777 (1988). "[A] reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" James v. Commonwealth, 53 Va. App. 671, 677, 674 S.E.2d 571, 574 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Rather, the relevant question is "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 906-07 (2009) (*en banc*) (quoting Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008)).

Appellant argues that the trial court erred by denying his motion to strike the attempted robbery charge because the Commonwealth presented no evidence of his specific intent. To convict a defendant of attempted robbery, the Commonwealth must prove that the defendant specifically intended to commit the elements of a robbery and that he committed a direct but ineffectual action to accomplish that crime. Jay v. Commonwealth, 275 Va. 510, 524-25, 659 S.E.2d 311, 319 (2008).

The Commonwealth responds that because appellant failed to challenge the jury's finding that he intended to commit robbery when it convicted him of armed burglary, this Court may not revisit that factual finding. We agree with the Commonwealth.

Neff v. Commonwealth, 63 Va. App. 413, 758 S.E.2d 87 (2014), supports the Commonwealth's argument. In Neff, this Court held that the defendant could not challenge one

- 11 -

conviction when he failed to challenge a second conviction that necessarily implicated his argument as to the first. Id. at 417, 758 S.E.2d at 89. In that case, defendant assaulted a police officer while being arrested for public intoxication. Id. at 415, 758 S.E.2d at 87. After his conviction of both crimes, defendant challenged only his conviction of assault on the grounds that there was no probable cause to arrest him for public intoxication. Id. at 415, 758 S.E.2d at 88. The fatal flaw observed by this Court was that because defendant was found guilty of public intoxication beyond a reasonable doubt, probable cause to arrest him for that offense necessarily existed when the offense occurred. Id. at 416, 758 S.E.2d at 88. He failed to challenge that finding of guilt, and therefore it became "the law of the case." Id.

In this case, the trial court instructed the jury that it had to find beyond a reasonable doubt that appellant intended to commit robbery before it convicted him of armed burglary. Appellant has not assigned error to that factual finding.[9] Just as the fact of probable cause to arrest was necessarily subsumed in the unchallenged conviction in Neff, the fact of appellant's specific intent to commit robbery is necessarily subsumed in his armed burglary conviction.

Thus, the law-of-the-case doctrine forecloses his argument.

### D. Reasonable Hypothesis of Innocence

Finally, we reject appellant's argument that the evidence did not exclude the possibility that someone else forced his way into the Moores' home. The Commonwealth may prove its case through circumstantial evidence so long as the "circumstances proved . . . exclude every reasonable hypothesis of innocence." Burrows v. Commonwealth, 224 Va. 317, 319, 295 S.E.2d 893, 894 (1982) (quoting Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867

---

[9] While we acknowledge that appellant's fourth assignment of error encompasses all of the charges against him, including the armed burglary charge, we note that he challenges only the sufficiency of the evidence to prove his identity as one of the two masked intruders. He does not challenge the sufficiency of the evidence supporting the jury's underlying determination of his specific intent to rob.

- 12 -

(1982)). The hypothesis' reasonableness, however, is itself "a 'question of fact.'" <u>Clanton</u>, 53

Va. App. at 572, 673 S.E.2d at 910 (quoting <u>Emerson v. Commonwealth</u>, 43 Va. App. 263, 277,

597 S.E.2d 242, 249 (2004)). Although a jury cannot "arbitrarily" disregard a hypothesis of

innocence, such a choice is arbitrary "only when no rational factfinder could believe the

incriminating interpretation of the evidence and disbelieve the exculpatory one." <u>Vasquez v.

Commonwealth</u>, 291 Va. 232, 250, 781 S.E.2d 920, 930 (2016). This Court must therefore

affirm if a rational jury "could have found that the incriminating evidence renders the hypothesis

of innocence unreasonable." <u>Id.</u>

In this case, a rational jury could have concluded that appellant's hypothesis of innocence

was unreasonable in light of the incriminating circumstantial evidence of his guilt. About forty

minutes after Mark Moore fired two shots at three intruders, appellant and Brown arrived with

gunshot wounds at a hospital located about forty minutes' drive away. Both men claimed that

they were together at a house party when they were shot, but they could not provide basic details

that would have allowed police to confirm their explanation. Meanwhile, cell phone records

suggested that both men were near the Moores' residence when the home invasion occurred.

Forensic evidence showed that Brown was shot with the same kind of unusual ammunition that

Moore used during the home invasion, and police found his blood in the third intruder's car.

Because appellant claimed that he was with Brown when they both were shot, and the

evidence tended to prove that Brown was one of two masked men involved in a shoot-out with

Moore, a rational jury could have found that appellant was involved in the home invasion of the

Moores' residence.

CONCLUSION

For the above-stated reasons, we affirm appellant's convictions.

<u>Affirmed.</u>